v. Consequence South LLC Mr. Duff. Your Honors, and may it please the Court, my name is Anderson Duff, and I'm here on behalf of Consequence Sound and Consequence Media Group. I think maybe I should start with some of the first questions that you all asked and just walk through them. So Judge Jordan, you asked about the, or excuse me, Judge, yeah, it was Judge Jordan asked about the exclusive license, and we talked about how you could divide up the right to put an image on a billboard, on a T-shirt, etc. Well, the language of the artist agreement is not so limited. It gives Annie Leibovitz the right, yes, she has to work in a collaboration with these two parties, one or the other, but she can create, she can use the photographs for, in special projects or any other endeavor that Annie Leibovitz deems of interest, that's the first paragraph. So that's not a meaningful limitation. That's saying that Great Bowery, under that argument, that's saying that Great Bowery can put the image on a billboard, and then if Annie Leibovitz wants to, she'll collaborate with these parties and maybe put it on the exact same billboard. That is at the... The version of the agreement I have in front of me is the redacted version, so... Oh, I do have... ...by giving me the unredacted version. Okay. What paragraph are you referring to? Your Honor, that's at the, I believe it's the last sentence in paragraph one, grant of rights. Number of paragraphs. Number of paragraph one, yes.  Artists shall make... Isn't that just referencing the agreement with the chair of the organization? In other words, that's not an open-ended, she can do whatever she wants with other people, is it? It is, Your Honor. It's saying that she can work with those other parties to use the photographs however she wants, which means that it's not a meaningful limitation on the rights. But... Again, if this is the language you're referring to, the last sentence of numbered paragraph one says, artists shall make best efforts to notify Trunk Archive in advance if the use of a licensed image by Robert Pledge or Contact Press... The two limited to other individual people may conflict with the rights granted herein. That's right, Your Honor. Your Honor, that illustrates my point. This agreement expressly contemplates the fact that Annie Leibovitz and these other parties might make uses of the photographs that directly conflict with the purported grant of rights immediately above it. And, Your Honor, I'd like to... A license could be exclusive as to everybody else, but except these folks? I mean, why can't you divide it up that way? Why can't leaders retain the right to deal with these two specific parties but have license to create poverty for the rest of the world? That's a great question, Your Honor. And the answer is that the exclusivity relates to the right to exploit the copyright rights and not to the relationship of the parties. So to answer your question with an example, perhaps, if I wrote a book and I granted exclusive rights to Simon & Schuster to publish a hardcover copy of that book, I can't then go to Penguin and grant them a license to publish a hardcover copy of that book. That would violate the exclusive license. And that's what this paragraph is showing, is that the fact that Amy Leibovitz can work with other people to exploit the photographs in the exact same way illustrates that she has not actually granted anything to Greg Bauer here. And if Your Honors will look at the very next paragraph... Why wouldn't we read the agreement against the backdrop of copyright law and invisibility and say, look, the parties here didn't write a nonsense agreement. Where sentence 2 cancels out sentence 1. They did it just like Corrigan says they did it. Your Honor, that's exactly right. We need to look at this agreement as a whole. And if you look at this agreement outside of that one sentence that Greg Bauer cites, you'll see that this is not a grant of copyright rights. This is an employment agreement. This is an agreement for services. If you look at the very next paragraph, you find out that Greg Bauer does not have the right to license the images at all. It goes out and negotiates the licenses that it wants to sign with third parties, but it has to bring those back to Amy Leibovitz and get her permission. You read further on in the agreement, you find out that Greg Bauer is not entering into these licensing agreements. What is the language that requires that? In paragraph 2, it states that, for clarification, any sale or license of the licensed images by Greg Bauer must be approved by artists in advance. And you read further and find out that this agreement expressly states that Greg Bauer is not acting in its own capacity when it signs these licensing agreements. It is acting as Amy Leibovitz's agent. It is only signing as her representative, not in its own capacity. If it owned an exclusive right to, or any copyright right, it could sign these agreements on its own behalf. But it's not doing that here. And it's not doing that because this is not an assignment of any copyright right. Greg Bauer does not even have a non-exclusive right to use the copyright in the photographs. It has the right to go out and negotiate these licensing agreements and bring them back to Amy Leibovitz, who retains all rights in the photographs. So that is also borne out by the authorization. What do you do with the declaration that she filed? Well, Your Honor, the declaration that she filed, she might want to be able to assign the right to sue. She probably doesn't want to be a named plaintiff in a lawsuit, but that's just not how it works. The Copyright Act does not allow a party to assign the right to sue. The only parties withstanding are described in the Copyright Act, and it has to be a legal or beneficial owner of an exclusive copyright right. The Copyright Act is an extremely powerful tool. You say, I think you said in your brief somewhere, that it's easy or worse without effect to write an agreement such as the one that is being proposed by your opponent. What do those agreements say that this one doesn't say? Sure. Your Honor, we could use Minden as an example. I mean, I think that Minden is wrongly decided, but the grant of rights in that case does not just say that the plaintiff in that case is going to be a licensing agent. It also grants them an unambiguous right to distribute and reproduce the images. Yes, here we go. Minden has granted the unrestricted exclusive right to distribute, that's a Section 106 copyright right, license and or exploit the images without seeking special permission to do so. The closest thing in the one sentence in the artist's agreement that gets to any kind of actual copyright right is the right to license, right? But courts within the Eleventh Circuit, district courts in the Northern District of Georgia, the Southern District of Florida, have considered almost identical language and found that the right to license is not a copyright right. And in fact … Why is it? Why are those decisions correct in that sense? What does it mean to license? Well, so it's unfortunate that they use in the artist's agreement the word license because in the copyright context, you can't grant somebody else rights that you do not have. But in this case, the artist's agreement is not actually granting any rights to Great Bowery. It's just saying that Annie Leibovitz will not appoint any other party to act as her licensing agent. And I can give you … That doesn't answer the question. I'm sorry. What does it mean to license? To license is to, in the copyright context, is that you own one of the six, Section 106 copyright rights, and you're going to grant it to a third party. And that's the divisibility. That's part of what the divisibility …  Her declaration, Ms. Leibovitz's declaration, paragraph 48, document 31-1 in the record says, after the publication, I provided the Episode 8 photographs, the photographs in question here, to the Trump Archive under the terms of the artist's agreement so that the Trump Archive could be the exclusive licensor of the Episode 8 photographs for any other publications at which to license them. So back to my question. What do you do at summary judgment with her declaration? Well, the fact that she might characterize it as an assignment of rights does not change the substance of the artist's agreement, which does not grant Great Bowery any copyright rights. It just states, instead of relating the word, excuse me, exclusive in the artist's agreement, it is not referring to Great Bowery's rights as to a copyright right. It is referring to Great Bowery's relationship to Annie Leibovitz. That paragraph can be read in a very different way. The artist's agreement was meant to provide Great Bowery with the exclusive right to license these photographs. Well, but the agreement, it does not do that. It expressly states that Great Bowery is only acting as a representative of Annie Leibovitz. If it actually – We're not saying – it doesn't say – No, no, no. It literally – We're not saying it's all representative. It says – it says that in – I didn't really get to read the agreement that way, but I didn't see, and I stand to be corrected, any express language saying that Great Bowery was only a representative of Miss Leibovitz. It says that in paragraph 3, Your Honor. It says that Great Bowery will be responsible for negotiating and executing licenses on artist's behalf. If Great Bowery actually owned any of the copyright rights, it would not be executing those agreements on Annie Leibovitz's behalf. It would be executing the agreements on its own behalf. And I can give you an example. The artist's agreement itself is not signed by Annie Leibovitz. It is signed by her manager and representative. And Annie Leibovitz, in a declaration at summary judgment, explained that and said that her manager, Karen Mulligan, had – Excuse me, Your Honor. Yes, Your Honor. What if the agreement is ambiguous or needs to be interpreted, and wouldn't that counsel toward not assigning a matter at summary judgment? And then my second question is what law would apply to that? Is it just Florida contract law that we're applying? Is the copyright law overlay that somehow? How do you – what law are you applying? Your Honor, I think in this case Florida law of contract would probably apply because my clients are based in Florida, and I think that there's enough context there. So I think that Florida law would apply. And – What if the agreement was not entered into by your clients? Right. Oh, you're right. I guess I'm not sure, Your Honor. We don't know enough about Karen Mulligan or Gray-Bowery, but the agreement – Nobody was opposed in this case, right? Nobody opposed. Nobody was opposed, Your Honor. No. Okay. So the rule that Gray-Bowery is arguing for here, that it, as an authorized agent of Annie Leibovitz, should have standing to bring a copyright infringement lawsuit, would significantly expand the carefully circumscribed right of standing to bring copyright infringement lawsuits that's found in the Copyright Act. That's a narrow limitation, and courts are hesitant to breathe in something into the Copyright Act that is not there. And the rule that Gray-Bowery is asking for would – could, in theory, give Karen Mulligan, the manager who signed Annie Leibovitz's – or who signed the artist agreement, standing to bring a copyright infringement lawsuit in this case. If Karen Mulligan – this is just a hypothetical – but if Karen Mulligan had an agreement with Annie Leibovitz to be her exclusive manager with respect to the rights of the photographs and go out, and she had the exclusive right to go negotiate with rights management companies like Gray-Bowery, then the rule that Gray-Bowery wants us to adopt would grant Karen Mulligan standing to bring a copyright infringement lawsuit in this case as well. Did she file an affidavit or a declaration in this case? No, Annie Leibovitz did, explaining who Karen Mulligan was, because – I don't believe that Karen Mulligan did sign a declaration, no. No, I was just giving you a hypothetical, the result that we could face if an authorized agent is given standing to bring copyright infringement lawsuits. The Copyright Act is clear that standing is limited. The Copyright Act is very, very powerful. It contains fee shifting and allows plaintiffs to recover statutory damages. And the limitation that Congress has balanced that out with is a limitation on who can bring copyright infringement claims, and this Court should protect the standing narrowed in the Copyright Act. Thank you. Okay, Mr. Peruzzi. He points to two sentences in the artist agreement, one of which says that Ms. Leibovitz has to approve licensing. I'm paraphrasing. And the second of which says that Great Bowery is entitled to act in a representative capacity for her. Again, I'm paraphrasing. He says that those two sentences eliminate any notion of exclusivity, even under a divisibility standard. What's the response? It's absolutely incorrect. The first one that requires the approval, so what? We still are the only ones with the exclusive right to do it. It could be any number of reasons. Maybe she doesn't like the owner of a particular publication, right? That could be a basis. There'd be a conversation about it, but you know who can't do it? She can't. She cannot grant any licenses. So the fact that we have this covenant that may apply to the license, it doesn't take away from our exclusive right to do it. I don't want to put words in your mouth, but you're saying that I think that a copyright owner's veto right does not take away from the exclusivity of a 106 right provided in an agreement like this one? A hundred percent, because Bowery is still the only person that can do it. Her ability to veto it, to use your term, doesn't give her the right to do it. We still have the right. And even if it did, Minden addresses this specifically. In Minden, in fact, the artists themselves, they maintain the right to grant their own licenses to third parties. And this gets to this issue of co-ownership that I spoke of in my opening remarks. You can co-own an exclusive right. I know that the district court here says exclusive means exclusive, but as Judge McNulty said in Adagio, and as the court said in August's first line financial, which you can find at 2024 Westlaw 531680, exclusive in the copyright context does not mean exclusive. So in Minden, for example. Are you saying that Ms. Leibowitz remains the owner? She remains the owner of the copyright, but we are the exclusive owner of the ability to distribute it to third parties via license or otherwise. And that's the divisibility principle. It happens all the time. She has the ability. She doesn't have the ability to grant the license, but she has the ability to veto a license that you want to, that your client wants to give. That's exactly right. She cannot grant licenses and she cannot enforce her rights because we need to play this out. If what, if this is not reversed and this case goes back down, or does not go back down and is finished, who enforces the copyright? The court's found that Great Bowery can't, but Great Bowery has a contract with Ms. Leibowitz saying it's the only one that could have authorized this use. And so Ms. Leibowitz is precluded by that contract from bringing an infringement claim. And that should really, I think that sets the table for why we're right here on appeal. The copyright ownership is, I'm sorry, the ownership of the exclusive right is owned by Great Bowery. The parties agree that that's the case, the parties to the contract, not the parties to the case. And so if we don't win here, the parties already agreed that only Great Bowery has the right to bring these infringement claims. Well, your opponent, as I thought specifically said in its briefing, that Ms. Leibowitz was the right party to bring the suit. So it sounds like you're agreeing with that. I meant to ask him when he was up here why he didn't agree to the amendment, if that's their position. So are you saying Ms. Leibowitz would not be able to bring a suit, even in light of the infringement? Here's what would happen under the law and under the agreements in this case. If Ms. Leibowitz did file that lawsuit, and this may or may not happen given the relationship, Great Bowery would be able to sue Ms. Leibowitz and say, look, you're breaching our agreement. We have the exclusive right to authorize any and all uses and to license the exact use that's at issue in this case. And so if Ms. Leibowitz didn't bring the lawsuit, as the courts and as the other side is saying would be okay, they'd be in breach, express breach of this agreement. And the argument that's being made about the retention of rights by the artist was explicitly rejected in Minden, where the court wrote that this right can be divided between the parties with each co-owner entitled to sue to protect his or her interest in the right. And here it's been subdivided, and Great Bowery is the one with the exclusive ability to enforce that right. And that brings me back to what I thought was a fairly shocking concession on my friend's response here. He said under copyright law, you cannot grant rights that you do not have, and that is exactly our case. We had the right to grant consequence, for example, the right to display the work at issue. We could not have done that, per his admission, if we didn't have the right to do so. And remember, my client has been working with his legal... But we are granting rights under this agreement for years with no dispute. The whole point of this... And that's based, I think, on the fact that we didn't use these magic words of saying reproduce, distribute. But no magic words are required. That's the Della Casa case. And, in fact, even in the August versus Lyne financial case, which is the only... The consequence district court case has never been followed by any other court. One court, this August case, has looked at it and basically says in a footnote, that case is just wrongly decided. You don't need the technical jargon. Again, this even goes back to Hunstein. You don't need to use the literal words that are in the statute in order to grant a right, in order to grant standing under the statute. There's simply no requirement. And to deprive an agency of rights, and to deprive the parties of their intent under the agreement because they did not use a magic word, it's not in the statute. And all the cases say you don't need magic words. One of the cases eloquently says, it doesn't have to be the Magna Carta. A couple of lines will do, so long as they evidence the intent to transfer this exclusive right. Okay. One last thing is this carve-out that we've talked about. If anything, it proves too much, right? If, as my friend here argues, Ms. Leibovitz had the right to do whatever she wanted and this thing wasn't exclusive, why have the carve-out? The carve-out makes pellucid the fact that my client owns all rights other than this carve-out for Mr. Pledge and his company. Again, it's undisputed that Consequence did not collaborate with Mr. Pledge or his company, so they're walled out per HOST, right? They're not part of it. And one last thing I want to point out is just this inconsistency, and that's that the district court required our agreement, even though it says any and all uses and even though it includes license, she said, well, it fails because it didn't use the literal language of Section 106, reproduce, display, distribute. However, in looking at the language for Pledge and Contact, it doesn't have any of those 106 terms. It says deliver to or collaborate with. Those are not identical to 106 rights. And so we have this inconsistency where we're faulted for not using the identical language, but then our exclusivity is destroyed by the use of non-identical language. It's simply inconsistent. What would have happened if the district judge had granted your motion as Leibowitz is in the case, now Great Bowery and Leibowitz are the plaintiffs? You say both of them can't have the right. What would have happened? What that would do, Your Honor, per imperial design, this Court has said when you have both the punitive original author and the licensee together in a lawsuit, it 100% precludes a third party, like Consequence here, the infringer, from challenging whatever that arrangement is. And that was recently echoed in Dish Networks v. Frafer, I believe, is the case, which was argued before a different panel, I think July 30th. But that case said the same thing. It's at Westlaw 1515938. That court said, relying on imperial residential design, that the chief purpose of Section 204, that's the statute that talks about these transfers, is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming ownership. As such, it would be, quote, unusual and unwarranted to permit a third party infringer to invoke this Section 204 about the transfers language where, quote, there is no dispute between the owner and the transferee about the status of the copyright. That's on four with what we have here. Ms. Liebowitz-Bowery, we agree. I am testing Judge Jordan's patience, so thank you very much. No, no, not at all. I don't mean to test anyone's patience. I apologize, unless there's any other questions. You've both been answering questions, and we appreciate your arguments. Thank you very much. Thank you. Thank you.